UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONATHAN JOSEPH GOOD #197972,

       Plaintiff,

v.

B. SPENCER,

       Defendant.

_____/

Case No.  2:21-cv-00001

Hon.  Hala Y. Jarbou
U.S. District Judge

# REPORT AND RECOMMENDATION

## I.  Introduction

This Report and Recommendation (R&R) addresses (1) a summary judgment motion filed by Plaintiff Jonathon Joseph Good, (2) a summary judgment motion filed by Defendant Corrections Officer (CO) Spencer, and (3) Good's motion to prohibit the use of the video submitted by CO Spencer as an exhibit or for production of the "entire video of each event."  (ECF Nos. 64, 76 and 80.)

The Plaintiff in this case – state prisoner Good – filed this civil rights action pursuant to 42 U.S.C. § 1983.  Good alleges that his rights were violated while he was confined at the Kinross Correctional Facility (KCF).  (ECF No. 1.)  Good's verified complaint alleges that CO Spencer retaliated against him by issuing him a Class II misconduct ticket for creating a disturbance.  After a hearing, Good was found guilty of a Class II misconduct ticket for excessive noise.  Good asserts that he was issued the misconduct after he requested a grievance form because he wanted to

1

submit a grievance against CO Spencer for closing the day room approximately eight minutes earlier than the usual time, for using profanity, and for looking at Good's prisoner file.

Plaintiff Good and Defendant CO Spencer both argue that no genuine issue of material fact exists, thus entitling them to judgment in their favor on Good's retaliation claim. Good asserted that he requested a grievance form to file a grievance on CO Spencer for closing the dayroom earlier than other officers had in the past, for using profanity, and for reading personal information from his prison counselor file. In the opinion of the undersigned, Good's stated reasons for submitting a grievance against CO Spencer could not rise to protected conduct because they are frivolous. It is respectfully recommended that the Court deny Good's motion for summary judgment and grant CO Spencer's motion for summary judgment.

**II.  Factual Allegations**

Good says that on December 5, 2020, CO Spencer announced that she was closing the day room at 3:47 PM. (ECF No. 1, PageID.4.) Good asked CO Spencer why she was closing the day room early because the "regular unit officers" closed the day room at 3:55 PM. (*Id.*) Good says that Spencer then stated, "who the fuck do you think [you're] talking to?" (*Id.*) Good says that without saying anything more, he packed up his typewriter and returned to his bunk area. (*Id.*)

Good alleges that at approximately 3:55 PM, he left his bunk area to fill his water bottle at a drinking fountain, but CO Spencer and CO Bebout were standing

close to the drinking fountain. (*Id.*) Good alleges that he asked CO Spencer if she would move because he did not want to get the officers wet while he filled up his water bottle. (*Id.*) Good says that Spencer stated, "I know who you are" and then walked away toward a desk. (*Id.*)

Good alleges that he returned to his bunk area and began to reflect on his encounters with CO Spencer. (*Id.*, PageID.4-5.) Good concluded that CO Spencer had something against him, so he decided that he would avoid her and stay in his bunk area. (*Id.*, PageID.5.) At approximately 9:50 PM, another prisoner informed Good that Spencer was in PC McDowell's office reading prisoner files. (*Id.*) Good immediately knew that Spencer was looking at his file, so he left his bunk area to further investigate. (*Id.*) When Good walked past PC McDowell's office he saw CO Spencer reading the family history of the presentence investigation report in his file. (*Id.*) Good immediately complained to the COs at the desk that CO Spencer had cursed at him and was now reading the confidential section of his presentence report. (*Id.*) Good asked to speak with a supervising sergeant. (*Id.*) CO Spencer came out of the office and stated that she could read any prisoner file. (*Id.*)

Good told CO Spencer that he was asking to see a sergeant because she had "started messing with me from the start and [was] now reading my file." (*Id.*) After CO Spencer reiterated that she could read any file she wanted, Good decided that CO Spencer was trying to create further conflict, so he turned toward CO Babout and asked for a grievance form. (*Id.*) Before CO Babout was able to give Good a grievance form, CO Spencer asked Good "what's he doing, getting a grievance?" (*Id.*)

3

CO Babout responded "yes" as he handed Good the form. (*Id.*) Good started to walk away, but CO Spencer called him back and told him that he was creating a disturbance. (*Id.*) Good says he responded by stating "it's kind of convenient for you to wait for me to request and threaten to write a grievance to say I'm creating a disturbance. That's retaliation." (*Id.*)

Good says that his request to see a supervisor, and his statement that he was writing a grievance on CO Spencer for her use of profane language, her implied threat of "I know who you are, (which was speaking about Plaintiff's habit of writing a grievance), and her reading of Good's confidential presentence report" satisfy the retaliation element of protected conduct. (*Id.*, PageID.7.)

Good asserts that an adverse action was taken against him when CO Spencer wrote him a false misconduct ticket with the charge of creating a disturbance. (*Id.*) After a hearing, the charge was changed to excessive noise and Good was found guilty. (*Id.*, PageID.11.) Good's appeal was denied. (*Id.*)

Good argues that causation was established because CO Spencer wrote the misconduct ticket in response to Good's statement that he would write a grievance against her. (*Id.*) Good says that this establishes that CO Spencer was motivated by protected conduct. (*Id.*) Good was on modified access to the grievance process so he needed to first request a grievance form before he was allowed to submit a grievance. (ECF No. 65-4, PageID.393.) His request was denied because the issues he wanted to grieve related to a minor misconduct and his recourse was to appeal the findings on the misconduct. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.*

Good argues that he can establish that he engaged in protected conduct when he asked to speak to a sergeant and requested a grievance form to assert that (1) CO Spencer closed the day room early, (2) CO Spencer used profanity, and (3) CO Spencer read Good's prison file. Good says that he was subsequently issued a misconduct ticket which establishes adverse conduct was taken.[1] Good argues that CO Spencer issued the misconduct ticket solely in retaliation for his requests to speak to a sergeant and to obtain a grievance form to submit a grievance against CO Spencer.

CO Spencer argues that Good did not engage in protected conduct because the grievance that he intended to file was frivolous. CO Spencer also asserts that based upon Good's behavior she would have issued the misconduct ticket despite his request for a grievance form.

### a. Protected Conduct

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "If the grievances are frivolous, however, this right is not protected." *Id.* Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith v. Campbell*, 250 F.3d 1032, 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response

---

[1] Defendant Spencer did not contest in her pleadings the adverse conduct element of Good's retaliation claim.

to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous. As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases).[2] This Court has also found grievances involving "verifiably untrue" allegations to be frivolous. *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *report and recommendation adopted*, No. 1:19-cv-116, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020). Similarly, the Sixth Circuit held that a prisoner's grievance complaining about conduct that had no impact on the prisoner was frivolous. *Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *2–3 (6th Cir. May 22, 2000) (finding that a grievance complaining about a prison employee eating at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]").

---

[2]   For example, in *White–Bey v. Griggs*, the Sixth Circuit found that a prisoner's grievance that he was provided a typewriter rather than a computer was frivolous. 43 Fed. App'x 792, 794 (6th Cir. 2002).

As noted by this Court in *Rayos v. Leavitt*, requiring a grievance to "assert a constitutional right in order to constitute protected conduct . . . is not the proper standard." No. 1:20-cv-968, 2022 WL 873633, at *1 (W.D. Mich. Mar. 24, 2022). The only permissible restraints on a prisoner's First Amendment rights are those in furtherance of "the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Nothing in MDOC Policy suggests that limiting the grievance process to constitutional claims is necessary to further legitimate penological goals. In fact, MDOC Policy Directive 03.02.130 ¶ F provides that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that **personally affect the grievant**, including alleged violations of this policy, and related procedures." (emphasis added). Therefore, even grievances complaining of unsatisfactory conditions that adversely impact the prisoner but do not violate the constitution are expressions of speech protected by the First Amendment.[3] *Rayos*, 2022 WL 873633, at *1 ("The First Amendment protects a prisoner's right to complain about conduct by prison officials. Those complaints do not have to rest upon constitutional rights in order to qualify as protected conduct.").

---

[3]  In *Wolfel v. Bates*, a prisoner was issued a rules infraction ticket after drafting a petition complaining that the COs were harassing the inmates by "starting showers and 'walklines' between 5:30 and 6:00 a.m." 707 F.2d 932, 933 (6th Cir. 1983). Though the petition did not complain of constitutional violations, the Sixth Circuit found that by punishing the plaintiff for drafting the petition without finding that the statements were false or malicious, the COs abridged his First Amendment rights. *Id.* at 934. *Wolfel* demonstrates that a prisoner's First Amendment right to seek redress of grievances has never been contingent upon a violation of their constitutional rights.

Good asserts that CO Spencer violated his rights in three ways and that he sought to complain to a sergeant about her conduct and to grieve these issues prior to the issuance of the misconduct ticket for creating a disturbance.[4]

**1. Closing the dayroom earlier than usual**

Good says that CO Spencer closed the dayroom earlier than the other COs who usually close the dayroom. Good complained about the earlier closing of the dayroom to CO Spencer and he later indicated that he wished to grieve this issue.[5]

It is undisputed that CO Spencer closed the dayroom approximately eight minutes before Good expected it to be closed. It is also undisputed that there was no set or established time when the dayroom would be closed. Good simply refers to the closing as earlier than when the regular unit officers closed the dayroom. CO Spencer was working temporarily in the unit due to staff shortages. (ECF No. 77-2, PageID.513 (Affidavit of CO Spencer).) She attests that she was required to close the dayroom before the 4:00 PM formal count and did so approximately fifteen minutes before formal count was taken. (*Id.*)

Clearly, Good's complaint or grievance regarding the closing of the dayroom earlier than he expected would be frivolous. First, Good has not shown that there was an established time for closing the dayroom or that a CO did not have authority

---

[4] Good never spoke to a sergeant because a sergeant was not called by the COs, and he was not allowed to file a grievance on these issues because he was on modified access to the grievance system and his request was denied.

[5] It is unclear whether Good is arguing that his complaints about CO Spencer's closing of the dayroom is the basis for his protected conduct. Nevertheless, the closing of the dayroom started the events which are the subject matter of Good's complaint.

to close the dayroom. Second, Good could not dictate the time when the dayroom was to be closed. Finally, established precedent has rejected a similar claim. This Court has held that a threat to file a grievance on a CO who closed the dayroom one half hour early was not protected conduct because a grievance asserting such a claim would be frivolous. *Robinson v. Stephan*, 1:18-cv-166, 2018 WL 6444282, *3 (W.D. Mich., Dec. 10, 2018) (the closing of the dayroom early on one day did not implicate a major requirement of life, was *de minimus*, and not "an egregious abuse of authority" that falls short of rising to protected conduct necessary to support a retaliation cause of action). Similarly, it is recommended that this Court conclude that a grievance asserting that CO Spencer closed the dayroom eight minutes earlier than Good expected is not protected conduct.

### 2. Use of profanity

Good says that when he questioned CO Spencer about closing the dayroom room early, she responded by using profanity. Good says that profanity violates the rules and his complaint or grievance regarding a rule violation is protected conduct. To establish that his grievance was not frivolous, Good needs to show that the officer's conduct had an "adverse impact" on Good. *Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, *3. A threat to file a grievance due to a prison guard's verbal abuse of the prisoner was not protected conduct because a grievance asserting verbal abuse by a prison guard is frivolous. *Scott v. Kilcherman*, 230 F.3d 1359, 2000 WL 1323346, *2 (6th Cir. Sept. 18, 2000) ("[a] inmate has no constitutionally protected right to be free from verbal abuse" and threat to file grievance on this issue was frivolous). A

grievance asserting verbal abuse and harassment is frivolous.  *Charzan v. Mackay*, 1:19-cv-116, 2020 WL 7773419 (W.D. Mich., Dec. 30, 2020), accepting Report and Recommendation, 2020 WL 7774741, *3 (Nov. 30, 2020)

Good alleges that his intent to file a grievance against CO Spencer for her use of profanity was protected conduct.  Good says that CO Spencer violated policy by using profane language to "degrade or belittle another person or group".  (ECF No. 65, PageID.368.)  CO Spencer denies that she used profanity, but even if she had in the manner asserted by Good in his complaint, his grievance could not be protected conduct because it would have been frivolous.

### 3.  Reviewing a prisoner's file

Good says that CO Spencer had no right to review his prisoner file and that his request for a form to file a grievance on this issue was protected conduct.  Good says CO Spencer may only access his files by Court order or through a Freedom of Information Act request.  (ECF No. 65, PageID.369.)  Good says that Spencer was reading his counselor file which was the only file available in the unit.  (*Id.*)  Under Policy Directive 01.04.130, Counselor files are used as a prisoner's "working case file" and are "maintained by the housing unit where the prisoner is located".  (ECF No. 65-18, PageID.446, ¶M.)  Record Office and "housing unit staff are responsible for ensuring proper filing of documents in prisoner files maintained within their areas of control."  (*Id.*, PageID.447, ¶Q.)  Staff may "only access prisoner files as part of their official job duties and not use file information for personal reasons."  (*Id.*, ¶R.)  "Files shall be directly supervised and controlled by assigned staff."  (*Id.*, ¶T.)

11

CO Spencer had access to Good's Counselor file while she was in the unit working as a Corrections Officer in the course of her job duties. Prison Counselor Michael McDowell submitted an affidavit stating that all H-unit prisoner counselor files are maintained in his office. (ECF No. 77-8, PageID.571 (Affidavit of Michael McDowell).) PC McDowell attests that counselor files are available and accessible to all MDOC staff in the unit and staff can physically access files as needed. (*Id.*, PageID.572.) CO Spencer could access prisoner files as part of her official job duties. CO Spencer attests that reading a prisoner file "aids corrections staff in dealing with a particular prisoner because it can provide information about a prisoner's misconduct history and other circumstantial considerations regarding a prisoner's behavior as well as allow an officer to properly identify a prisoner." (ECF No. 77-2, PageID.514 (Affidavit of CO Spencer).) Good asserted that he told CO Spencer he was writing a grievance on her because CO Spencer was looking at his family history without any justifiable reason. (ECF No. 65-2, PageID.388 (Affidavit of Good).)

In the opinion of the undersigned, a grievance asserting that CO Spencer read Good's counselor file would have been frivolous because CO Spencer had authority to read the file and reading the file had no adverse impact on Good.

### b. Causation

Good argues that he only received the creating a disturbance misconduct ticket because he threatened to write a grievance and that the fact the hearing officer reduced the charge and found him guilty of excessive noise proves that the

misconduct ticket was false. CO Spencer argues that she would have issued the misconduct regardless of whether Good threatened to file a grievance.

To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). The Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399.

Good was found guilty by the hearing officer of excessive noise because "the body of the misconduct and the facility footage do not match the charge of creating a disturbance." (ECF No. 65-7, PageID.402.) CO Spencer asserts that Good's conduct by being disruptive was the reason that she wrote the misconduct ticket. Good says that as soon as he asked for a grievance form, CO Spencer told him she was issuing him a misconduct ticket for creating a disturbance.

In the opinion of the undersigned a genuine issue of fact exists as to whether CO Spencer wrote the misconduct ticket due to Good's behavior or because he threatened to write a grievance.

CO Spencer submitted a DVD to the Court to support her version of the events. Good argues that the video footage should not be considered by the Court or

alternatively Defendant should be required to submit a more complete version of what occurred before and after version supplied to the Court. The DVD provided to the Court was blank and contained no video footage. It is recommended that the Court deny Good's motion to prohibit the use of the DVD or for a more complete DVD as moot.

### IV. Recommendation

It is respectfully recommended that the Court deny Plaintiff Good's motion for summary judgment, grant Defendant Spencer's motion for summary judgment, and deny Plaintiff Good's motion to prohibit the use of the video or in the alternative to order the entire video.

If the Court accepts this recommendation this case will be dismissed.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 19, 2022 /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE